Matter of Welch.

the action was on one side, would not be more extraordinary than a sham answer, which merely puts in issue the allegations of the plaintiff, without setting up new matter. The term "sham plea" was well known when the code was adopted. Instances of these pleas may be found in 1 *Chitty's Pl.* 575; and it has obtained a precise legal meaning, applicable only to pleas of new matter, and in that known and established sense it was used in the code. This answer was also sworn to. For that reason also, as was held at the general term of this court in *Mier* v. *Cartledge*, (8 *Barb.* 75,) it ought not to be regarded as sham.

. The order appealed from is reversed, without costs.

[New-York General Term, October 4, 1852. *Edwards, Mitchell* and *Roosevelt*, Justices.]

In the matter of the application of BENJAMIN WELCH.

No proceedings can be had, to compel the delivery of books and papers belonging or appertaining to a public office, until a judgment of ouster has been regularly entered against the person executing the duties of the office.

An allegation, in a petition for an order to compel such delivery, that judgment was rendered and duly perfected in an action in the nature of a *quo warranto* brought by the people, to try the right of an individual to an office, on such a day; without stating in what court the judgment was rendered, or whether under the direction of a single judge, or at a special or a general term, is not sufficient, if the facts are denied.

If upon the trial of the cause, the judge directs the jury to find a verdict for the plaintiff, and orders that the bill of exceptions to be made up be heard in the first instance at a general term, judgment cannot be correctly entered until the court, at a general term, has decided upon the bill of exceptions.

Where, in an action to try the rights of contesting parties to an office, the attorney-general, having charge of the action on the part of the people, as well as of the plaintiff, stipulates that " all proceedings on the part of the plaintiff shall be stayed, until the decision of the supreme court, upon the bill of exceptions, shall be given and judgment perfected thereon, and that no execution, *or other proceeding* shall be taken or had *by the party in whose favor the decision shall be,* until the expiration of ten days from and after

Matter of Welch.

notice of said judgment being perfected, shall be served on the defendant," he cannot move on the part of the plaintiff in whose favor judgment is subsequently rendered, for an order to compel the incumbent to deliver over the books and papers belonging to the office, before the ten days have expired.

THIS was an application on the part of Benjamin Welch, for an order against James M. Cook, to compel Cook to deliver over to him, the said Welch, the books and papers in the custody of the said Cook, belonging and appertaining to the office of treasurer of the state of New-York. The application was founded upon a petition of Welch, duly verified, setting forth, that at a general election held in this state on the 4th day of November, 1851, he was duly elected treasurer of the state of New-York; but that, notwithstanding such election, the certificate of the state canvassers was given to James M. Cook, who entered upon the duties of said office, and continued to exercise the same. That on or about the 1st day of January, 1852, the people of this state, by L. S. Chatfield, their attorney-general, commenced an action in the supreme court, in the nature of a *quo warranto*, against the said Cook, founded on the facts aforesaid. That the venue in said action was laid in Tompkins county; and such proceedings were thereupon had, that on the 30th day of September, 1852, judgment was rendered and duly perfected in said action in favor of the people, adjudging that the defendant, James M. Cook, was guilty of usurping, intruding into and unlawfully holding and exercising the said office of treasurer, and the rights and franchises appertaining thereto, since the first day of January, 1852, and that he still did so unlawfully hold and exercise the same, and that he be, and was thereby excluded, ousted and removed therefrom. And it was further adjudged that the said Benjamin Welch, jr. was entitled to the said office of treasurer, and the rights, franchises, fees and emoluments thereof, and that he had been so entitled since the first day of January, 1852.

The petition further stated that Welch had taken the oath of office prescribed by law, and filed his bond, approved by the lieutenant-governor and speaker of the house of assembly, ac-

cording to the statute; and that on the 6th day of October, 1852, he served on Cook a copy of said judgment, and demanded from him the books and papers in his custody as treasurer of the state of New-York, in any way appertaining to said office; and that Cook refused to deliver the same to him. Cook, by affidavit, denied on his information and belief that Welch was duly elected such treasurer at the election held on the said 4th day of November, 1851, and claimed that he had received the certificate of the state canvassers; and that it appeared by the official canvass of the said election that he had received a majority of the votes, (setting forth the number given for him, and those given for Welch;) that he had been declared duly elected; had taken the oath, and given the bond prescribed by law, and entered on the duties of the office, which he still continued to execute. That on the 6th day of October, 1852, a copy of the paper (purporting to be a copy of judgment, as set forth in the petition of the said Welch,) was served upon him, which was the only copy of a paper served upon him, except the petition of Welch, and the certificate and order to show cause. That thereupon his attorneys, in pursuance of former directions of the deponent, proceeded to take and complete the necessary steps to appeal to the court of appeals from the judgment set forth in the petition; and that the said petition was the only notice of said judgment which had been served upon him. William L. Learned swore, that he was one of the defendant's attorneys in the action wherein the people were plaintiffs, and the said Cook defendant, and in which the alledged judgment was entered; that at the trial of the said action at the Tompkins circuit, a stipulation was made and signed by the attorneys for the respective parties, of which the following is a copy, to wit: " Supreme court, Tompkins circuit, March, 1852. The people of the state of New-York against James M. Cook. The presiding judge on the trial of this cause having directed a verdict for the plaintiffs therein, which the jury rendered in pursuance of such direction, it is hereby stipulated and agreed, that the defendant shall have thirty days in which to make and serve a bill of exceptions therein, and that the plaintiffs have the same time

to make and serve amendments thereto, and that all proceedings on the part of the plaintiff shall be stayed until the decision of the supreme court shall be given upon the said bill of exceptions and the points raised therein. And it is further stipulated, that after judgment shall be perfected in said cause, and after said decision shall be made by said court, no execution or other proceeding shall be taken or had by the party in whose favor the decision shall be, until after the expiration of ten days from and after notice of said judgment being perfected shall be served on such defendant." That on the 6th day of October, 1852, he sent by mail to the clerk of Tompkins county an undertaking and notice of appeal, in this case; and that on the 7th day of October, 1852, he caused a copy of the said undertaking, with the accompanying affidavit of justification and acknowledgment, and the notice of appeal to be served on L. S. Chatfield, attorney-general, for the said plaintiffs in this action. The deponent further stated in his affidavit, that, at the trial of the cause in Tompkins county, the court directed the jury to find a general verdict for the plaintiff, and ordered that the bill of exceptions made up in the cause by the defendant be heard in the first instance at the general term; and that this was the only verdict given in the said action. That, after the trial of the said action, a bill of exceptions was taken and argued at the general term of the supreme court held in Delaware county; and that no judgment was given in said action until the decision of said bill of exceptions at a general term of the supreme court in Cortland county, on the 14th day of September, 1852; on which day a rule for judgment was entered, as deponent was informed by a certified copy thereof and believed, and the same was not the judgment of which a copy had been served on the defendant, and contained no judgment of ouster. The deponent further alledged that there could be no authority for entering the judgment dated September 30th, 1852, other than said verdict and rule.

*L. S. Chatfield,* for petitioner Welch.

*John C. Spencer,* for Cook.

WATSON, J.   The writ of quo warranto, formerly in use to try the right of any persons to an office to which another claimed he was not entitled, has been abolished, and the remedy by civil action substituted in its place. (*Code of* 1851, § 428.)   In this action, the attorney-general, in addition to the statement of the cause of action, may also set forth in the complaint the name of the person rightfully entitled to the office, with the statement of his right thereto ; and may arrest the person who has received the fees and emoluments of the office, and hold him to bail, with the same effect, and subject to the same rights and liabilities as in other civil actions. (*Code,* § 435.)   Such were the proceedings in this case, and the judgment alledged to have been entered was that Welch was entitled to the office, and that Cook was an intruder into the same.   Upon the rendition of such a judgment, the provision of the code is as follows : " If the judgment be rendered upon the right of the person so alledged to be entitled, and the same be in favor of such person, he shall be entitled, after taking the oath of office, and executing such official bond as may be required by law, to take upon himself the execution of the office ; and it shall be his duty, immediately thereafter, to demand of the defendant in the action all the books and papers in his custody, or within his power, belonging to the office, from which he shall have been excluded.   If the defendant shall refuse or neglect to deliver over such books or papers pursuant to the demand, he shall be deemed guilty of a misdemeanor ; and the same proceedings shall be had, and with the same effect, to compel the delivery of such books and papers, as are prescribed in article five, title six, chapter six of the first part of the revised statutes."

The revised statutes give to the party in whose favor judgment has been rendered, the right to make complaint to the chancellor, any justice of the supreme court, any circuit judge, or the first judge of the county, where the person so refusing shall reside ; and if he shall be satisfied from the testimony offered that any such books or papers are withheld, he shall grant an order directing such person so refusing, to show cause before him, within some short and reasonable time, why he should not be

compelled to deliver the same. If, upon an inquiry before such officer, the person charged with withholding such books or papers, shall make affidavit that he has truly delivered over to his successor, all such books or papers in his custody, or appertaining to his office, within his knowledge, all further proceedings before such officer shall cease; and the person complained against shall be discharged. If he does not make such oath, then the officer shall by warrant commit such person to the jail of the county; there to remain until he shall deliver such books and papers, or be otherwise discharged according to law. (1 *R. S.* 124, §§ 50 *to* 53.)

The first objection taken by the defendant to the proceedings is to the jurisdiction of the court, on two grounds; one, that there is no evidence of any legal judgment in favor of Welch, that he is entitled to the office which he claims, or that the defendant is an intruder into the same and should be ousted therefrom. As no proceedings to obtain the books and papers belonging to or appertaining to the treasurer's office can be instituted before me, unless a judgment has been rendered upon the right of the person alledged to be entitled thereto and in his favor, it is important to look into the evidence of the existence of the judgment upon which Welch claims to be entitled to the books and papers belonging to the office. He states in his petition, that "judgment was rendered and duly perfected in said action on the 30th day of September, 1852." In what court, or whether under the direction of a single judge at a special term, or at a general term, he does not state. Were there no affidavits to contradict this statement, I might presume, or take it for granted, that it was entered in some court authorized to have it entered therein. The copy of the judgment alledged to have been entered, as set forth in the petition, does not state where the cause was tried; before what court; or that any court ever authorized a judgment to be entered on the finding the jury. So far as the petition goes, I am led to infer that the judgment was entered at once on the finding of the jury. But the affidavits of the defendant show that the cause was tried in the county of Tompkins; that the justice who tried it

directed the jury to find a verdict for the plaintiff, and ordered that the bill of exceptions to be made up in the cause be heard in the first-instance at the general term.

The judgment upon the finding of the jury would not, in such a case, be correctly entered, until the general term of the supreme court had decided upon the bill of exceptions; and the judgment record, set out in the plaintiff's petition, does not show that the bill of exceptions had ever been decided at the general term. But the defendant's affidavits go further, and show that a decision was given upon the said bill of exceptions at a general term of the supreme court, in the county of Cortland, on the 14th day of September, 1852; and that the same is not the judgment with a copy of which the defendant has been served, *and contains no judgment of ouster.* If this be so, then I have no jurisdiction in the matter. No proceedings to obtain the books or papers can be instituted until a judgment of ouster has been regularly entered against the person executing the duties of the office. It is said, on the part of the petitioner, that I have no right to inquire into the *regularity* of the judgment entered in favor of the petitioner. I have no proof before me of any judgment entered in his favor, showing his right to the office which he claims, except what his affidavit discloses; and it seems to me that if he can prove the existence of a judgment by affidavit, the party against whom he moves has an equal right to contradict its existence by affidavit. If the petitioner, then, relies upon the judgment record set forth in his petition, he is met with the objection interposed by the defendant, that "Judgment upon an issue of law, not tried at a general term, or an issue of fact, or upon confession, or upon failure to answer; (except where the clerk is authorized to enter the same by the first subdivision of section 246, and by section 284,) shall in the first instance *be entered upon the direction of a single judge,* or report of referees, subject to review at the general term, on demand of either party as herein provided," (*Code,* § 278,) or that "appeals in the supreme court shall be heard at a general term, either in the district embracing the county where the judgment *or order appealed from was entered,* or in

a county adjoining that county; except, that where the judgment or order was entered in the city and county of New-York, the appeal shall be heard in the first district." (§ 346.) "Judgment upon the appeal shall be entered and docketed with the clerk in whose office the judgment roll is filed. When the appeal is heard in a county other than that where the judgment roll is filed, or is not from a judgment of a county court, the judgment upon the appeal shall be certified to the clerk with whom the roll is filed, to be there entered and docketed." There is nothing in the petition to show that the judgment was entered under the direction of a single judge, or at a general term. There is not even a caption to the record to indicate whether it was entered at a general or a special term, and no certified judgment from the clerk of Cortland county; and yet, in a case where so stringent a remedy is asked for, as to imprison the defendant if he refuses to deliver the books and papers pertaining to his office, I am called upon to hold that the judgment upon which the petitioner moves is regular in the face of all these irregularities, or I might say illegalities.

Another objection of a grave character to my jurisdiction is interposed: that the attorney-general, who acted for the people whilst this cause was proceeding, to try the rights of the contesting parties to this office, stipulated that "all proceedings on the part of the plaintiff shall be stayed until the decision of the supreme court upon the bills of exceptions shall be given, and judgment perfected thereon, and that no execution or other proceeding shall be taken or had, by the party in whose favor the decision shall be, until after the expiration of ten days from and after notice of said judgment being perfected, shall be served on such defendant." This stipulation was not denied on the part of attorney-general on the argument; but he insisted, that notwithstanding his stipulation, he could not stipulate away the rights of Mr. Welch; that in that action he represented the people, but that now he was counsel for Mr. Welch. If I understand the statute, which I have quoted in the former part of this opinion, he has a right to include Mr. Welch (who claimed the right to the office of treasurer) in the same action with Cook,

who, it was alledged, *usurped* the office.    The judgment record, in the same breath that it declares that Mr. Cook *usurps* the office, also asserts that Mr. Welch is *entitled* to it, and in this action the attorney-general represented *both parties*.    He stipulated, therefore, (among other things,) for "*the party in whose favor judgment was rendered*," "that no execution *or other proceedings should be taken or had*, until after the expiration of ten days *from and after* notice of said judgment being perfected, should be served on the defendant."   He now moves on the part of Mr. Welch, the party in whose favor judgment was rendered, in a proceeding taken upon that judgment, to compel Mr. Cook to deliver over to him the books and papers belonging to the office of treasurer of the state, before the ten days have expired.   This I consider a violation of that stipulation.   The attorney-general having charge of that action, both on the part of the people and on the part of the contestant, Mr. Welch, had a right to stipulate for the parties whom he represented, how long the judgment to be pronounced by the supreme court upon the finding of the jury should remain inoperative ; and for what length of time the party in whose favor it was rendered should be precluded from taking any proceedings upon it.   Having done so, and the party in whose favor judgment was rendered having moved before the ten days have expired, (whether by the attorney-general as his counsel or by any other counsel,) he has taken these proceedings before he was warranted by the stipulation, and in consequence thereof I have no jurisdiction in the case.   This view of the case will save me the necessity of examining the point, whether the appeal to the court of appeals by the defendant suspends the operation of the judgment, so that no proceedings can be had thereon.

The motion to compel the defendant to deliver the books and papers to Mr. Welch must be denied, with $10 costs ; but without prejudice to Mr. Welch, and with leave to renew the motion on new papers.

[ALBANY SPECIAL TERM, October 26, 1852.   *Watson*, Justice·]